# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

**Case No. 19-cv-61141-CIV-BLOOM/Valle**

MARILYN ADAMS,

    Plaintiff,

v.

PARADISE CRUISE LINE OPERATOR
LTD., INC.,

    Defendant.

_____/

## **ORDER**

**THIS CAUSE** is before the Court on Defendant Paradise Cruise Line Operator Ltd., Inc.'s Motion for Summary Judgment, ECF No. [102]. Plaintiff Marilyn Adams filed a Response, ECF No. [106], to which Defendant filed a Reply, ECF No. [115].[1] The Court has carefully considered the pleadings, the record in the case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Defendant's Motion is granted.

**I.    BACKGROUND**

This is a negligence case concerning a slip-and-fall on board a cruise ship, the *Grand Celebration,* owned and operated by the Defendant. *See* Def.'s SOF ¶ 1. Plaintiff and her husband were fare-paying passengers. On June 15, 2018, they boarded the ship, walked around, and visited the lounge before going to their stateroom. *See* Def.'s SOF ¶¶ 1, 3–4.[2] The stateroom had been inspected and cleaned the morning before Plaintiff and her husband boarded the cruise ship. *See*

---

[1] The parties' factual submissions include Defendant's Statement of Material Facts ("Def.'s SOF") ECF No. [101], and accompanying exhibits, *see* ECF Nos. [101-1–101-9]; Plaintiff's Response to Defendant's Statement of Material Facts, ECF No. [107], including Plaintiff's Statement of Additional Material Facts, *see id.* ¶¶ A–L. Plaintiff's exhibits, *see* ECF Nos. [106-1–106-5] are appended to her Response.

[2] All facts are considered undisputed unless otherwise indicated.

Pl.'s SOF ¶ 5. Plaintiff entered the bathroom and observed it was in an "acceptable" condition. *See* Deposition of Marilyn Adams ("Pl.'s Dep") 64:22.[3] The bathroom measures 3 feet by 6.5 feet and has a 1.25-inch threshold dividing the shower area from the rest of the bathroom. *See* Def.'s SOF ¶ 7. The entrance to the bathroom contains a sign stating "WATCH YOUR STEP. BATHROOM FLOOR SLIPPERY WHEN WET." Def.'s SOF ¶ 10; Pl.'s SOF ¶ 10.

Approximately twenty minutes after entering the stateroom, Plaintiff took a shower. *See* Pl.'s Dep. 61:6–8. Before entering the shower, Plaintiff placed a towel on the floor outside the stall. *See id.* 69:13–15. When Plaintiff finished her shower, the air in her immediate environment was "cloudy" and "steamy," so she could not see where she was stepping. *See id.* 73:20–21. As Plaintiff stepped out, she slipped on what she observed to be a "lake," *id.* 73:4, or "pool," *id.* 82:21, of water, one to two inches deep, *id.* 81:16, on the bathroom floor. After Plaintiff fell, her husband observed "at least an inch" of water in the bathroom, deep enough so that the towel Plaintiff placed on the bathroom floor was "floating" on the water. Deposition of James Adams ("J. Adams Dep.") 38:22–23, 42: 9–10.

Plaintiff thereafter went to the ship's medical center to receive treatment. *See id.* Pl.'s SOF ¶ L. Upon returning to their room, Plaintiff's husband noticed an area of corrosion, "rot" and "rust" on the door frame in the bathroom "near the doorway entry into the shower stall." Pl.'s Dep. 85:9, 86:5–6. The rust was "fairly deep" and the corroded area appeared to be "four or five square inches" or "four inches" by "two inches." J. Adams Dep. 48:3–4; 49:7–8; Pl.'s Dep. 87:18–19. Plaintiff's husband took a photograph of the corroded area, *see* ECF No. [107] 9. Neither Plaintiff nor her husband ran the shower following the incident to test the source of the water. *See* Pl.'s

---

[3] Citations to deposition testimony rely on the pagination and line numbering in the original document.

Dep. 89:10–19. Plaintiff "didn't go near" the rusted or rotted area after her fall and did not observe water travelling through the rusted area. Pl.'s Dep. 89:25.

Plaintiff avers that she hit her head when she fell in the bathroom. As a result of her fall, she sustained a fracture in her left ankle that required surgery. Pl.'s Dep. 46:12–16, 73:3–6, 74:4–6.

Plaintiff alleges in her operative Complaint that she "discovered the flooded bathroom floor was due to rotted baseboards in the shower, causing the shower to leak into the bathroom." SAC ¶ 12. Plaintiff alleges nine theories of negligence. *See* SAC ¶ 16a–i. Plaintiff's theories may be grouped as follows: (1) failure to maintain a bathroom free from dangerous conditions, *see id.* ¶ 16a, c, i; (2) failure to inspect the bathroom for dangerous conditions and timely correct the same, *see id.* ¶16b, d–e, g; and (3) failure to warn Plaintiff of dangerous conditions in the bathroom, *see id,* ¶16f, h.

Plaintiff did not retain an expert to inspect or test the stateroom bathroom shower or the cause of any leaking or excess water. Plaintiff did not observe water leaking from the area of corrosion or rot, and neither she nor her husband ran the shower following the incident to test whether the "rotted" area leaked. *See* Def.'s SOF ¶ 15; Pl.'s SOF ¶ 15; Pl.'s Dep. 89:10–22.

Defendant obtained an expert in engineering and human factors, Tyler Kress, Ph.D., to inspect the stateroom bathroom and shower. *See* Def.'s SOF ¶ 16.[4] Dr. Kress measured the dynamic coefficient of friction ("DCOF") of the bathroom and shower floors to determine the floors' slipperiness and found the DCOF was suitable for interior flooring. *See* Def.'s SOF ¶¶ 18–20 (citing Declaration of Tyler Kress ("Kress Decl."), ECF No. [101-5] ¶¶ 8–11). Dr. Kress also "turned on the shower, and purposefully directed the spray onto the walls of the shower to observe

---

[4] On June 26, 2020 the Court entered an Order, ECF No. [126], denying Plaintiff's Motion to Strike or Limit Testimony of Defendant's Expert ("Motion to Strike"), ECF No. [98].

where and how the water flowed to determine whether it was possible for water to leak from 'rotted baseboards' (or minor damaged area) as identified by the Plaintiff." Kress. Decl. ¶ 12. "The damaged area [did] not leak as alleged." *Id.* According to Dr. Kress, "[a]ny water that was on the floor outside of the shower where [Plaintiff] allegedly stepped at the time of the incident would have been caused by the Plaintiff's own actions, for instance, how she placed the shower curtain, where she put the towel on the floor, and where she directed the shower head during her shower, and where she chose to place her foot." *Id.* ¶ 13. Otherwise, Dr. Kress "noted no condition in the subject shower that causes an unusual amount of water to accumulate on the bathroom floor." *Id.* ¶ 14.[5]

Plaintiff produced three online passenger experience reviews in support of her claim that Defendant had notice of the dangerous conditions. The reviews reflect other passengers' complaints about showers on cruise ships: a June 26, 2018 Review, ECF No. [106-1], addressed to Bahamas Paradise Cruise Line; a June 2019 Review, ECF No. [106-2], addressed to Grand Celebration Cruise; and a June 2017 Review, ECF No. [106-3], addressed to Grand Celebration Cruise. The June 26, 2018 Review, written by username "Brittni C." states, "we noticed the Pink MOLD and rust in our shower (see attached photos). Once we did shower, the water didnt [sic] hardly drain, so we both would have to stand in almost 2 inches of water for the entire shower. Gross." ECF No. [106-1] 3. The portions of the photographs visible on the review appear to show a part of a white basin with rusted edges. *See id.* The June 2019 Review, written by username "oladyrobin" states, "shower terribly small with curtain covering small circle, no matter how careful we were the floor always got wet, and we are average sized." ECF No. [106-2] 2. Finally, the June 2017 Review, written by username "mcv318" states, "[t]he shower constantly leaked out

---

[5] Plaintiff states Dr. Kress's spray testing protocol was inadequate. *See* Pl.'s SOF ¶ 22. Plaintiff makes the same argument in its Motion to Strike, which the Court denied.

into the bathroom when in use" and "[s]hower leaked out on to floor when ever [sic] used." ECF No. [106-3] 1–2.

Defendant now moves for summary judgment, arguing that no evidence exists to support Plaintiff's theories of liability, that the slippery nature of the bathroom floor was open and obvious, and the Defendant did not have actual or constructive notice of any dangerous condition.

## II. LEGAL STANDARD

Summary judgment is rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a), (c). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party. *See Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). If there are any factual issues, summary judgment must be denied and the case proceeds to trial. *See Whelan v. Royal Caribbean Cruises Ltd.*, No. 1:12-CV-22481, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (citing *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981)).

## III. DISCUSSION

"To prevail on a negligence claim, a plaintiff must prove that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm. *Gorczyca v. MSC Cruises, S.A.*, 715 F. App'x 919, 921 (11th Cir. 2017) (citation omitted). With regard to the fist element — duty — in cases involving "carrier[s] by sea," the carrier must "have

had actual or constructive notice of the risk-creating condition, at least where . . . the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989) (internal quotation marks and citation omitted).

Defendant argues that Plaintiff's theories of negligence fail on three separate grounds: (1) Plaintiff presents no record evidence of a dangerous condition, *see* Mot. 4–7; (2) Defendant had no notice of a dangerous condition and, therefore, no duty to warn, *see id.* 7–11; and (3) to the extent Plaintiff's negligence claim is based on the slipperiness of the shower floor only, the danger was open and obvious, and Defendant had no duty to warn Plaintiff, *see id.* 11–18. Plaintiff responds (1) her and her husband's testimony and observations document the dangerous condition in the bathroom, *see* Resp. 4–5; (2) the record reflects Defendant had notice of a dangerous condition, *see id.* 5–11; and (3) whether the danger was open and obvious is a question of fact, *see id.* 11–16.

The Court considers each of the arguments in turn.

### a. *There is no record evidence of a dangerous condition*

Plaintiff alleges Defendant failed to maintain a reasonably safe bathroom, *see* SAC ¶16 a, i — one with "safe flooring material, mats, and other non-slip materials," SAC ¶ 16c, and free from defects such as "leaks, rot, erosion, water damage, and/or other damage," *id.* ¶ 16b, d. In part and parcel with Plaintiff's negligent maintenance claims, Plaintiff alleges Defendant failed to inspect the bathrooms to identify defects and correct the same. *See id.* ¶16b, d–e, g. She further alleges, following the incident, that she "discovered the flooded bathroom floor was due to rotted baseboards in the shower, causing the shower to leak into the bathroom." *Id.* ¶ 12.

In support of her allegations, Plaintiff testified that she slipped on a "lake," Pl.'s Dep. 73:4, or "pool," *id.* 82:21, of water, one to two inches deep, *id.* 81:16, on the bathroom floor. And

according to Plaintiff, her husband observed an area of "rot" and "rust" on the door frame "near the doorway entry into the shower stall," *id*. 85:9, 86:5–6. Plaintiff's husband's testimony, *see* J. Adams Dep. 48:3–4; 49:7–8, corroborates Plaintiff's observation of the corroded area, as does the photograph, *see* ECF No. [107], taken by Plaintiff's husband.

Critically, Plaintiff fails to present any evidence (1) connecting the observed area of "rot" or "rust" to the alleged "leak" or "pool" or water, or (2) that the flooring was made of unsafe or extraordinarily slippery material. As to the corroded area, it is uncontested that Plaintiff did not observe it leaking before or during her shower. *See* Pl.'s SOF ¶ 15; Pl.'s Dep. 89:10–25. She did not run the shower following the incident to test whether the area leaked. *See* Pl.'s Dep. 89:10–25. And, she presents no lay or expert testimony demonstrating the area of corrosion did leak or could have leaked. As to the flooring, Plaintiff presents no evidence at all that the floor was constructed from unsafe or unreasonably slippery materials.

For its part, Defendant argues "there is no record evidence that there was a dangerous condition that caused [Plaintiff's] incident in the first instance." Mot. 4 (alteration added). The Court agrees. The parties do not contest that the bathroom was inspected the morning before Plaintiff boarded the ship, and Plaintiff initially found the bathroom to be in "acceptable" condition. Defendant presents expert evidence (1) the DCOF (slipperiness) of the floor was *not* unsafe for interior floors, *see* Kress Decl. ¶¶ 8–11; (2) the corroded area did *not* leak, *see id*. ¶ 12 and (3) "Dr. Kress observed 'no condition' in the shower that would cause "an unusual amount of water to accumulate on the bathroom floor" *id*. ¶ 14.

At the summary judgment stage, "Plaintiff[] can no longer rest on the allegations of [her] complaint. [She] must provide evidence to support each and every element of their claim." *Kallas v. Carnival Corp.*, No. 06-20115-Civ, 2009 WL 10668178, at *4 (S.D. Fla. Jan. 14, 2009) (alterations added), *report and recommendation adopted*, No. 06-20115-Civ, 2009 WL 10668179

7

(S.D. Fla. Mar. 4, 2009). To the extent Plaintiff alleges the "dangerous condition" in question is the area of corrosion or the floors' inherent slipperiness, Plaintiff's failure to rebut Defendant's evidence with her own is fatal. *See Smith v. Royal Caribbean Cruises, Ltd.*, 620 F. App'x 727, 730 (11th Cir. 2015) (finding the plaintiff could not rebut the defendant-cruise ship's expert evidence that it adequately maintained the location of the plaintiff's injury (a swimming pool) where the plaintiff failed to obtain an expert of its own.).[6]

Given the uncontested facts that Defendant inspected the bathroom and Plaintiff found it "acceptable," and absent any evidence of a defect in the bathroom, Plaintiff's theories of negligent failure to inspect for and correct dangerous conditions, and failure to maintain a bathroom free from dangerous conditions, fail.

### b. *Defendant did not have notice or a duty to warn*

Defendant argues "[b]ecause Plaintiff has failed to establish a dangerous condition existed in the bathroom in the first instance, the analysis should end." Mot. 7 (alteration added). The Court agrees, but it nevertheless addresses the notice requirement.

Absent evidence that the pooling of water was caused by rusted or rotted baseboards, as Plaintiff alleges, *see* SAC ¶ 12, the only dangerous condition Plaintiff may point to is the pooling of water itself. Plaintiff argues it is not her "burden . . . to determine the precise source or cause of the dangerous condition in the bathroom, but merely to prove that there was a dangerous condition of which the Defendant had or should have taken notice in time to take corrective measures." Resp. 5.[7]

---

[6] The Court does not conclude Plaintiff must have submitted expert testimony to rebut Defendant's expert testimony in order to survive summary judgment, but merely finds Plaintiff must produce *some* evidence of the alleged leak. The picture of the corroded area does not suffice, as Plaintiff submits no evidence that the corroded area was leaking or could have leaked or in any way the condition that led to her slip or fall.

[7] Plaintiff makes this argument in the section of her Response concerning the existence of record evidence, but the Court finds it relevant to its analysis of notice.

Plaintiff relies on *Keefe*, 867 F.2d 1318, a personal injury case where the plaintiff slipped and fell "while dancing at the ship's outdoor discotheque." *Id.* The district court granted summary judgment in favor of the defendant-cruise ship, but the Eleventh Circuit reversed, noting the court "made no express finding as to how long the particular unsafe condition" — the wet floor — "existed prior to [the accident]." The Court concluded the "proper course" was to remand the case for a factual determination whether the cruise ship had actual or constructive notice of the wet floor. *Id.* At 1323. Accordingly, the Court considers Plaintiff's evidence of notice.

Plaintiff contends, "the record reflects multiple sources of evidence of notice." Resp. 5 (capitalization; bolding, and underlining omitted), including (1) the sign in the bathroom warning Plaintiff that the floors are slippery when wet, (2) the fact that the stateroom had been inspected by trained crewmembers within 24 hours preceding the incident, and (3) social media posts recording "complaints about bathroom flooding after shower use in Defendant's vessel." Resp. 10; *see also id.* 9. The Court agrees with Defendant that there is a lack of notice of the alleged hazard — the excessive pooling of water on the bathroom floor.

Regarding the warning sign, Plaintiff reasons the existence of the sign evidences Defendant's notice of the slippery floor. *See* Resp. 9 ("By the very act of placing a warning notice in the bathroom, the Defendant acknowledged that it . . . knew that wet bathroom floors posed a slip and fall hazard." (alteration added)). This argument fails because the mere slipperiness of the bathroom floors is not the complained-of hazard. As noted, Plaintiff alleges she "slipped and fell after exiting the shower due to the bathroom floor *flooding*," SAC ¶ 12 (emphasis added), and testified she slipped on a "lake," Pl.'s Dep. 73:4, or "pool," *id.* 82:21, of water several inches deep.

The cases on which Plaintiff relies prove the point. In *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275 (11th Cir. 2015), the Eleventh Circuit considered "whether [the defendant-cruise ship] had actual or constructive knowledge that the pool deck where [the plaintiff] fell could be slippery

9

(and therefore dangerous) when wet, and whether it negligently failed to post a warning sign after the rain that preceded [the plaintiff's] accident. *Id.* at 1288 (alterations added). The Court found testimony that "warning signs were sometimes posted on the pool deck after rain" *id.*, was sufficient to withstand summary judgment because the act of posting warning signs for a particularly alleged hazard — a slippery pool deck — evidenced the cruise-ship's knowledge the pool deck could become slippery. Here, there parties do not contest a warning sign was posted or that the sign warned the shower floor could be slippery. *See* Def.'s SOF ¶ 10; Pl.'s SOF ¶ 10. But, the sign did not warn of the alleged hazard — excessive pooling of water — and the Court cannot construe the sign as providing notice of such.

*Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710 (11th Cir. 2019) is also instructive but does not support the conclusion that the subject sign provided notice to Defendant. In *Guevara*, the Eleventh Circuit held "a cruise ship operator has notice of a condition — and thus a duty to warn — if a sign is posted on a ship warning about *the condition*." *Id.* at 722. (emphasis added). Here, the condition Plaintiff complains of is not merely the slipperiness of the floors.[8] Rather, it is the "corroded and rusty area" and the "pool" or "lake" of water. As such, the sign posted in the Plaintiff's stateroom fails to provide any notice.

Similarly, in *Esanu v. Oceania Cruises, Inc.*, 49 F. Supp. 3d 1078 (S.D. Fla. 2014), the court found that because the defendant "positioned a portable 'slippery when wet' sign in the area," "a reasonable jury could find that [the defendant] had actual knowledge that the surface became slippery when wet." *Id.* 1081. Here, the warning sign read "slippery when wet" Def.'s SOF ¶ 10;

---

[8] As discussed below, if this were the complained-of condition, it was open an obvious such that Defendant had no duty to warn Plaintiff.

Pl.'s SOF ¶ 10 (capitalization omitted), but it did not read "pooling or excessive flooding may occur."[9]

Plaintiff contends that the "presence of trained crewmembers in [Plaintiff's] stateroom at the relevant time shortly before she boarded" evidences crewmembers should have "detected and corrected the water leak in the bathroom . . . ." Resp. 10 (alterations added).  Plaintiff relies on *Plott v. NCL America, LLC*, 786 Fed. App'x 199, 201, 203 (11th Cir. 2019) and *Carroll v. Carnival Corp.*, 955 F.3d 1260 (11th Cir. 2020) to support her argument.  *See* Resp. 10.

Neither case is apposite.  In *Plott*, the Eleventh Circuit found there was a genuine issue of fact as to whether the defendant-cruise ship had notice that the floor in a public atrium was wet, and should have been cleaned or cordoned-off the area before the plaintiff walked on it, slipped, and fell. *See id.* at 201–03. First, unlike *Plott*, Plaintiff slipped in a shower, and not on a public atrium floor, and does not allege there was water on the floor prior to Plaintiff entering the shower. Second, the *Plott* defendant "conceded that the area was continuously monitored, and the entire crew was responsible for identifying and promptly addressing any safety concerns, including by placing warning signs when appropriate. [The defendant's] corporate representative testified that if any [of its] employee[s] saw an accumulation of water on the floor, the employee would be expected to either clean it up, cordon it off, and also put [up] a warning sign." *Id.* at 201 (alterations added; other alterations adopted).  Here, Plaintiff points to no "specific corrective policy," (Reply 5) that Defendant's employees failed to undertake relating to the shower or flooring, resulting in Plaintiff's fall.

Defendant makes the same point regarding *Carroll* — where the plaintiff slipped and fell on a lounge chair blocking a walkway.  955 F.3d at 1267.  The court found there was evidence the

---

[9] In *Esanu* the court also noted the plaintiff "proffer[ed] evidence that the surface was extraordinarily slippery, as if ice, [which] thereby create[d] a genuine issue as to whether there existed an unreasonably dangerous condition." 49 F. Supp. 3d at 1081.  Plaintiff offers no such evidence here.

defendant had "a policy of keeping the chairs in-line and/or in the upright position and instructing employees to ensure that they are not blocking the walkway" and this evidence was "enough to withstand summary judgment on the issue of [the defendant's] notice. *Id.* Plaintiff points to no such policy here.

Plaintiff contends that Defendant had notice based upon the online reviews submitted by previous cruise ship passengers "record[ing] complaints about bathroom flooding after shower use in Defendant's vessel." Resp. 10 (alteration added). Under *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661 (11th Cir. 1988) evidence of prior incidents like the incident alleged in a complaint are only admissible on a showing "conditions substantially similar to the occurrence in question must have caused the prior accident." *Id.* 661–62 (11th Cir. 1988). Here, the Court agrees with Defendant that Plaintiff "fail[s] to develop the record to determine whether [the reviews recorded instances] . . . substantially similar [to Plaintiff's incident] in the first instance." Reply 6.

In the June 2017 review — the only review predating this case and thus the only review relevant to the notice inquiry — the unidentified reviewer states (1) the "shower constantly leaked out into the bathroom when in use"; and (2) the "[s]hower leaked out on to floor when ever [*sic*] used." June 2017 Review 1–2 (alteration added). Here, *Lundquist v. Celebration Cruise Operator, Inc.*, No. 12-cv-60655, 2013 WL 12145942 (S.D. Fla. June 10, 2013) is instructive. In *Lundquist*, the plaintiff "point[ed] to three prior slip-and-fall incidents in stateroom bathrooms." *Id.* at *3 (alteration added). Plaintiff's evidence consisted of (1) a "one-paragraph summary" describing a passenger's slip-and-fall accident prepared by the defendant's employee; (2) a letter to the defendant complaining of water on the bathroom floor; and (3) deposition testimony from a passenger who observed water coming up from a bathroom drain. *See id.* at *3 n. 2. The court found the one-page summary "offer[ed] no details about the circumstances of [the passenger's] fall," the letter "provide[d] no details about how much water was on the floor of [the passenger's]

12

cabin, or if the bath rug or some other foreign substance contributed to [the passenger's] fall," and the deposition testimony did not describe "circumstances . . . so similar to [the plaintiff's] fall to put [the defendant] on notice of a dangerous condition." *Id.* (alterations added). Plaintiff's single admissible review makes no mention of corrosion or rot, fails to describe the nature or amount of water on the floor, and it is otherwise less detailed than the evidentiary submissions in *Lundquist*, which were also found to be lacking in notice.

### c. *The condition was open and obvious*

To the extent that Plaintiff contends the dangerous condition causing her fall was the slipperiness of the shower floor itself, Defendant argues it had no duty to warn Plaintiff of the same because the condition is open and obvious. The Court agrees.

Plaintiff's own testimony reflects that she appreciated the risks of slipping when getting out of the shower. Plaintiff conceded that she "kn[ows] wet floors are slippery," Pl.'s Dep. 66:16. As such, *Lundquist*, 2013 WL 12145942, is again instructive. In *Lundquist*, the plaintiff slipped and fell while stepping out of a shower. *Id.* at *1. The plaintiff testified "he knew from experience that a bathroom floor can be slippery when wet." *Id.* The court noted the plaintiff's testimony "ma[de] clear that [the plaintiff] was aware of the danger of stepping with wet feet onto a wet bathroom floor, and the danger was apparent and obvious" and found the defendant had not breached its duty of care to the plaintiff. *Id.* (alterations added).

The same point is made in *Luby v. Carnival Cruise Lines, Inc.*, 633 F. Supp. 40, 41 (S.D. Fla. 1986), *aff'd sub nom. Luby v. Carnival Cruise Lines*, 808 F.2d 60 (11th Cir. 1986), another cruise-ship-shower-slip-and-fall case. The plaintiff tripped over a ledge allegedly hidden by a shower curtain. *Id.* at 42. The Court found it was "clear . . . that the presence of the ledge behind the shower curtain was, or should have been, obvious to [the plaintiff] by the ordinary use of her senses. And [the] defendant is entitled to expect, as a matter of law, that [the plaintiff] would

perceive that which would be obvious to her upon the ordinary use of her senses." (alterations added; internal citation omitted). Notably, in a footnote to its conclusion, the court stated:

> [the] plaintiff did not allege or attempt to prove a design defect in the ledge. Moreover, there was no evidence which suggested that the ledge did not adequately serve its intended function, i.e., containing soapy water to prevent it from flooding the bathroom and causing a slippery, dangerous floor. [The defendant], however, in support of its motion for summary judgment, submitted the affidavit of Joseph Farcus, an architect with experience in the interior design of cruise ships. In his affidavit, Joseph Farcus asserted his expert opinion that the bathroom was properly designed. Where, as here, an issue is one of the kind on which expert testimony must be presented, and the affidavit of the expert is uncontradicted, summary judgment is proper.

*Id.* at *42 n.3 (alterations added). Applied here, *Luby* instructs a cruise-ship defendant has no duty to warn a plaintiff of open and obvious conditions, and while it may have a duty to do so with respect to hazards created by a defect in the room or a physical element that is "not serving its alleged function," *id.*— like a leaking floorboard — the plaintiff must proffer evidence such defects exist. Plaintiff has not done so.

While the Court is sympathetic to the extensive injury Plaintiff suffered as a result of her slip and fall, the record fails to reflect any evidence that Defendant maintained a hazardous condition in the stateroom bathroom, and otherwise fails to show that Defendant was on notice of the same. "Although the Court views all facts in the light most favorable to the Plaintiff, it finds Plaintiff [] fails to provide the facts necessary to support [her] contention" in this case. *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1236 (S.D. Fla. 2006).

### IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendant Paradise Cruise Line Operator Ltd., Inc.'s Motion for Summary Judgment, **ECF No. [102]**, is **GRANTED.** Final Judgment will be entered by separate order. Any pending motions are **DENIED** as moot and any scheduled hearings are **CANCELED.**

Case No. 19-cv-61141-CIV-BLOOM/Valle

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 2, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of record